**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:24-cv-00027-HBB**

**JODY BEELER** **PLAINTIFF**

**VS.**

**JOY SKAMSER**
**SMYRNA READY MIX CONCRETE, LLC** **DEFENDANTS**

**MEMORANDUM OPINION & ORDER**

Defendants Joy Skamser and Smyrna Ready Mix Concrete, LLC move for an order precluding expert testimony by Licensed Clinical Social Worker ("LCSW") Hannah Klein (DN 68). Plaintiff Jody Beeler responded at DN 70 and Defendants replied at DN 74.

This is a personal injury action arising from a motor vehicle collision. Beeler identified Klein as a non-retained expert. The Defendants note that Beeler saw Klein for counseling sessions from October 2024 to May 2026 and will opine that "Beeler suffers from PTSD[1] as a result of the January 26, 2022, motor vehicle accident, and that the accident 'amplified' her anxiety and depression" (DN 68, p. 2). Although Klein is a licensed clinical social worker with a master's degree in clinical social work, the Defendants contend that she is unqualified to offer testimony as to psychological disorders.

[1] Post Traumatic Stress Disorder. "As medically defined, PTSD concerns the development of characteristic symptoms following a psychologically traumatic event generally outside the range of usual human experience." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1209 (6th Cir. 1988).

The Defendants challenge Klein's testimony on two fronts. First, they contend that "[i]t is well established Kentucky law that licensed clinical social workers are not qualified to test for, or to make a diagnosis of, a psychological disorder such as PTSD" (*Id.* at p. 4). In support of this contention, they cite *Hellstrom v. Commonwealth*, 825 S.W.2d 612 (Ky. 1992), in which the court held that a clinical social worker was unqualified to express an opinion on a child's "psychological disorder or other abnormal mental condition" because, as opposed to a physician, psychiatrist or psychologist, the social worker was not "trained in diagnosing the cause of a child's mental disturbance." *Id.* at 614. Defendants also cite *R.C. v. Commonwealth*, 101 S.W.3d 897 (Ky. App. 2002) which relied on *Hellstrom* in excluding a LCSW's testimony on whether a child had been the victim of sexual abuse, and *Brosnan v. Brosnan*, 359 S.W.3d 480 (Ky. App. 2012), which likewise relied on *Hellstrom* in concluding that a social worker was not qualified to offer an opinion as to PTSD because "she lacks the appropriate education and training to diagnose psychological disorders, including PTSD . . . ." *Id.* at 485. Turning to federal court precedent, the Defendants cite *Blackshear v. Werner Enters.*, No. 2004-4-WOB, 2005 U.S. Dist. LEXIS 46109 (E.D. Ky. May 19, 2005). *Blackshear* relied upon the scope of social work practice set forth in KRS 335.020, which specified that social work included "nonmedical psychotherapy." The Court concluded that, while the social worker "may be qualified to counsel plaintiff within the definition of 'social work,' she is not trained or licensed as a psychologist and thus . . . she is not qualified to test for, or to make a diagnosis of, a psychological disorder such as PTSD." *Blackshear* at 6.

The Defendants' second challenge to Klein's testimony is that her opinions "are not reliable because she is not qualified to administer the appropriate methodology, principles, and testing to determine whether Beeler suffers from PTSD, anxiety, depression, or bipolar type II" (DN 68 at p. 7). The Defendants contend that psychological testing is the reliable method for diagnosing

psychological disorders and symptoms, citing *Blackshear's* observation that psychological testing is reserved to the practice of psychology. *Blackshear* at 4-5. Defendants note further that 201 KAR 26:115 requires credentialing by the Board of Examiners of Psychologists in order to administer and interpret psychological testing. Thus, Defendants argue, Klein cannot administer the type of testing required to diagnose a psychological condition such as PTSD.

Beeler responds to the Defendants' argument by noting that the decisions on which they rely predate an amendment to KRS 335.020. Chapter 335 addresses social workers and professional counselors, and section 335.020 contains definitions for the chapter. The 2026 amendment to the statute added a definition of "clinical social work" to include the "application of specialized clinical knowledge and advanced clinical skills in the areas of assessment, diagnosis, evidence-based interventions, research, and treatment of mental, emotional, or behavioral disorders, conditions or addictions . . . ." KRS 335.120(5). While the statute specifies that it does not include activities reserved to the practice of psychology as defined in KRS 319.010, the statute provides an exception under KRS 319.015(3). That statute, in turn, provides in relevant part that clinical social workers are not prohibited from using written or computerized interpretations of psychological testing or administering symptomatic and behavioral assessments. Beeler argues this amendment invalidates the pre-amendment cases holding that social workers were not authorized to test for and diagnose psychological conditions. Beeler asserts this same authorization to conduct behavioral assessments undercuts the Defendants' argument that she is not authorized to perform psychological testing. Moreover, they note that the Defendants have not identified any testing they contend was performed incorrectly or any infirmity in Klein's diagnostic process.

The Defendants argue in reply that the amendment of KRS 355.020 does not change the outcome. Defendants point again to *R.C.*, 101 S.W.3d 897. There, the court considered an amendment to KRS 600.020 that added licensed clinical social workers to the list of professionals recognized as a "qualified mental health professional" for purposes of the Unified Juvenile Code, KRS chapters 600-645. A party in that case argued the addition of LCSWs to the list of qualified mental health professionals invalidated the prior holding of *Hellstrom* and demonstrated that a LCSW was entitled to offer expert opinion testimony on child sexual abuse. Defendants point out that *R.C.* rejected this argument and sided with *Hellstrom*. The court found that inclusion of LCSWs among qualified mental health professionals did not confer any greater entitlement to express an expert opinion. "The mere inclusion of a licensed clinical social worker within the definition of qualified mental health professional does not lead us to conclude that the General Assembly intended that such a person be considered qualified as an expert for all purposes." *R.C.*, 101 S.W.3d at 901. Further, as Defendants note, the court observed that the legislature could not usurp the court's independent determination of an expert's qualification to testify under KRE 702. *See R.C.* at 901.

Defendants also argue that the amendment to KRS 335.020 does not provide LCSWs *carte blanche* to engage in the practice of psychiatry. They note that the statute specifies the practice of clinical social work does not include activities reserved to the practice of psychology except as permitted in KRS 319.015(3). Defendants conclude from this:

> Rather than eliminating the distinction between social workers and psychologists, the statute identifies the circumstances in which persons who are not licensed psychologists may engage in particular activities associated with psychological assessment. However, in doing so, LCSWs "shall not represent themselves to be psychologists or use the term 'psychological' in describing their services." KRS 319.015(3). The existence of that specific statutory exception confirms that the General Assembly intended the general boundary between the two professions to remain intact.

(DN 74 at p. 4). Defendants assert that, had the General Assembly intended to grant LCSWs the same scope of practice as psychologists, there would be no need for separate statutory boundaries.

## Discussion

While state law governs substantive claims in a diversity case, federal law generally governs procedural and evidentiary issues, including the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Sixth Circuit has summarized Rule 702's requirements which determine the admissibility of proposed expert testimony. First, the proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

Where, as here, an expert challenge implicates both the witnesses' competency and qualification,[2] the court must take both state and federal law into consideration:

> [T]he Sixth Circuit has noted that "in the context of the admissibility of expert-witness testimony, it is somewhat unclear how Fed. R. Evid. 601—which determines witness *competency* based on state law for claims where 'State law supplies the rule of decision'—interacts with Fed. R. Evid. 702—which determines

---

[2] While the Defendants have sometimes used the terms "competent" and "qualified" interchangeably, their first challenge to Klein's testimony is that she is not competent under state law to offer her opinion, and their second challenge is that she is not qualified to conduct psychological testing or offer testimony of a psychological nature.

> witness *qualification* based on federal law under *Daubert* and its progeny." *Bock v. Univ. of Tennessee Med. Grp., Inc.*, 471 F. App'x 459, 461 (6th Cir. 2012) (emphasis in original) (citation omitted). For analysis' sake, the Sixth Circuit has "reconciled the tensions between Rules 601 and 702 by separating these two inquiries." *Id.*

*Chesnut v. United States*, No. 6:17-CV-00079-GVFT-HAI, 2019 U.S. Dist. LEXIS 216622, at *6 (E.D. Ky. Dec. 17, 2019).

1. <u>Competency</u>

The inquiry begins with Klein's competency as an expert, meaning as a threshold whether she is permitted under Kentucky law to offer an opinion on the topic. *See id*. In this regard, the 2026 amendment of KRS 335.020 is important. Kentucky law directs the Court to consider the plain language of the statute to ascertain and give effect to the intent of the General Assembly. *Jackson Purchase Energy Corp. v. Marshall Cty.*, 534 F. Supp. 3d 761, 779 (W.D. Ky. 2021)(citing *Barnett v. Central Ky. Hauling, LLC*, 617 S.W.3d 339, 341-42 (Ky. 2021)). As the Defendants have noted, KRS 335.020 "defines the professional scope of clinical social work" (DN 74, p. 3).

Prior to the 2026 amendment, the statute only contemplated the practice of social work in a counseling capacity, which it described as:

> The professional activity of helping for remuneration individuals, groups, or communities enhance or restore their capacity for social functioning and create societal conditions favorable to this goal. It includes the professional application of social work values, principles, and techniques to one or more of the following ends: counseling and nonmedical psychotherapy with individuals, families and groups; helping people obtain tangible services; assisting communities or groups provide or improve social and health services; and
>
> Engaging in social work education, research planning and the appropriate administration of social work or social welfare services.

2026 Ky. Acts 77; 2026 HB 424. The 2026 amendment modified this definition of social work:

> The application of social work theory, knowledge, methods, ethics, and the professional use of self to restore or enhance social, psychosocial, or biopsychosocial functioning of individuals, couples, families, groups, organizations, or communities; or

> Engaging in social work education, research, planning, training, supervision, or the appropriate administration of social work services;

KRS 335.020(6)(a) & (b). The 2026 amendment also created a new definition addressing *clinical* social work:

> "Practice of clinical social work" means the practice of social work that requires the application of specialized clinical knowledge and advanced clinical skills in the areas of assessment, diagnosis, evidence-based interventions, research, and treatment of mental, emotional, or behavioral disorders, conditions, or addictions, not to include activities reserved to the practice of psychology as defined in KRS 319.010, except as permitted under KRS 319.015(3);

KRS 335.020(5).[3] The addition of a new classification of social work practice is significant. The prior version of the statute did not contemplate a clinical aspect of social worker practice. As *Blackshear* noted in reliance on the prior version of the statute:

> Therefore Blythe's testimony must be limited to opinions which she is qualified to render within the parameters of her "discipline," i.e. social work . . . .
> Pursuant to the definition of social work and "nonmedical psychotherapy" under Kentucky law, Blythe is thus qualified to testify concerning "the use of learning, conditioning methods, and emotional reactions" that she has used "to assist [plaintiff] to modify feelings, attitudes, and behavior."

*Blackshear*, 2005 U.S. Dist. LEXIS 46109 at *7-8 (citations omitted). Under the current statute, LCSW's are no longer included in the "discipline" of social work and are afforded their own distinct field of practice. The Supreme Court of Maryland considered a similar statutory distinction between social workers and licensed clinical social workers:

> From the plain language of the Act, it is clear that Petitioner's argument is misguided. Petitioner's description of Dr. Munson as a "social worker" ignores a significant distinction drawn by the Act. Dr. Munson is not a "social worker" as that term is defined in § 19-101(g); rather he is a licensed clinical social worker. The

---

[3] *See* 201 Ky. Admin. Regs. 23:070 (2026) (Providing that the "'Practice of clinical social work' means the practice of social work that focuses on the evaluation, diagnosis, and treatment of a mental disorder as related to the total health of the individual" and requiring that "[a] practitioner of clinical social work shall: [e]stablish a therapeutic relationship with his or her client that includes: Assessment and diagnosis of mental disorders using professionally recognized clinical nomenclature . . . .").

> Act draws a critical distinction between the licensed social worker and the licensed clinical social worker. See § 19- 101(f)(2). Unlike a licensed social worker, Dr. Munson, as a licensed clinical social worker, is specifically authorized by the Legislature to render diagnoses based on a recognized manual of mental and emotional disorders.

*In re Adoption/Guardianship No. CCJ14746*, 759 A.2d 755, 759 (Md. App. 2000). The Eastern District of Tennessee found a LCSW competent to offer an opinion on diagnosis under Tennessee's statute:

> The Court first considers whether Ms. Sherfey possesses specialized knowledge that will assist the trier of fact. In doing so, the Court notes that Ms. Sherfey is a licensed clinical social worker in the State of Tennessee. As a licensed clinical social worker, Ms. Sherfey is permitted under Tennessee law to apply "specialized clinical knowledge and advanced clinical skills in the areas of assessment, diagnosis and treatment of mental, emotional, and behavioral disorders. . . ." Tenn. Code Ann. § 63-23-105. In assessing, diagnosing, and treating, licensed clinical social workers, like Ms. Sherfey, apply the Diagnostic and Statistical Manual of Mental Disorders (DSM). *Id.* In summary, Ms. Sherfey's license signifies a level of specialization in the field of social work and provides her with the statutory privilege of assessing, diagnosing, and treating mental illness all of which suggests she has skills requisite to offer expert opinions on those subjects.

*Carrick v. Wellmont Health Sys.*, No. 2:19-CV-109, 2022 U.S. Dist. LEXIS 65329, at *6-7 (E.D. Tenn. Jan. 7, 2022).

Kentucky's definition of the practice of clinical social work is complicated by the inclusion of both a limitation and an exception to that limitation. KRS 335.020(5) provides that the scope of practice does not "include activities reserved to the practice of psychology as defined in KRS 319.010, except as permitted under KRS 319.015(3)." KRS 319.010 defines the practice of psychology as:

> "Practice of psychology" means rendering to individuals, groups, organizations, or the public any psychological service involving the application of principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, thinking, emotions, and interpersonal relationships; the methods and procedures of interviewing, counseling, and psychotherapy; and psychological testing in constructing, administering,

> and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotion, and motivation. The application of said principles in testing, evaluation, treatment, use of psychotherapeutic techniques, and other methods includes, but is not limited to: diagnosis, prevention, and amelioration of adjustment problems and emotional, mental, nervous, and addictive disorders and mental health conditions of individuals and groups; educational and vocational counseling; the evaluation and planning for effective work and learning situations; and the resolution of interpersonal and social conflicts;

KRS 319.010(7). The exception afforded LCSW's under KRS 319.015(3) is:

> Nothing in this chapter shall be construed to limit:
>
> . . . .
>
> (7) Persons licensed, certified, or registered under any other provision of the Kentucky Revised Statutes from rendering services consistent with the laws regulating their professional practice and the ethics of their profession. The use of written or computerized interpretations of any psychological testing or the administration and use of symptomatic and behavioral assessments by a practitioner of the healing arts as defined in KRS 311.271(2), clinical social worker, marriage and family therapist, professional art therapist, advanced practice registered nurse, physician, physical therapist, or occupational therapist who uses these interpretations or administers and uses these assessments shall not be limited. They shall not represent themselves to be psychologists or use the term "psychological" in describing their services;

KRS 319.015(3). Thus, an LCSW may utilize written or computerized interpretations of psychological testing and may administer and use symptomatic and behavioral assessments without encroaching on the field of psychiatry. Otherwise, there is significant overlap in the fields of LCSW and psychiatry. Both may assess, diagnose and treat mental, emotional, or behavioral disorders, conditions, or addictions. LCSWs may not, however, represent themselves as psychologists or as providing psychological services. This dovetails with KRS 319.005 which likewise provides that only psychologists licensed by the Board may hold themselves out by title or describe the services they provide as "psychological," "psychiatrist," or "psychology." KRS 319.005(1). "KRS 319.005 is a general statute, which, by its plain language indicates a legislative

intent to protect the public from unqualified individuals representing themselves to be psychologists." *Commonwealth v. Funk*, 84 S.W.3d 92, 98 (Ky. App. 2002). Consequently, a LCSW may engage in the diagnosis and treatment of mental and emotional disorders pursuant to KRS 335.020(5), but in so doing may not identify themselves as psychologists or psychiatrists or represent that they provide psychological treatment.

"PTSD is categorized as a mental disorder pursuant to the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 33 (5th ed. 2013) (DSM-5)." *Commonwealth v. Moore*, 709 S.W.3d 241, 257 (Ky. 2025). If a LCSW is statutorily authorized to diagnose and treat a mental disorder, of which PTSD is a type, then it follows that a LCSW is competent to express an opinion as to that diagnosis and treatment. This is not to say, however, that the authorization to practice in a field automatically qualifies Klein to express an opinion in this case.[4] It simply means that she has cleared the first hurdle of competency. As the Supreme Court of Virgina observed:

> Accordingly, we hold that licensed clinical social workers who are authorized to diagnose mental disorders by statute in appropriate circumstances, may render expert testimony regarding such diagnoses. However, it remains incumbent upon the trial court to determine whether a particular licensed clinical social worker has the skill, knowledge, and experience regarding the pertinent subject matter to qualify as an expert.

*Conley v. Commonwealth*, 643 S.E.2d 131, 135 (Va. 2007).

---

[4] Indeed, the Court of Appeals in *R.C.* took umbrage at the idea that the statutory amendment adding LCSW's to the list of "qualified mental health professional" for purposes of the Unified Juvenile Code mandated that the court allow LCSWs to testify, noting that KRE 702 vested the trial court with broad discretion to determine whether a witness is qualified to express an opinion. The undersigned does not disagree, and the amendment of KRS 335.020 does nothing more than establish the *competence* of LCSWs to testify as to matters withing their professional field, not the *qualification* to testify in a particular case. *See R.C.,* 101 S.W.3d at 901.

1. Qualification

A proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. In order to obtain her license as a LCSW, Klein was required to hold at least a master's degree in social work from an educational institution accredited by the Council on Social Work Education, have a minimum of two years supervised post-master's degree experience acceptable to the licensing board in the use of specialty methods and measures employed in clinical social work practice, and pass an examination approved by the Kentucky Board of Social Work. *See* KRS 335.100(1). Here, Defendants do not dispute that Klein holds the required master's degree and has been licensed as a clinical social worker. She thus satisfies the education and training requirements to offer testimony as a LCSW.

The next question is whether Klein's specialized knowledge will help the jury determine a fact in issue, which, here, is whether Beeler sustained or exacerbated a mental health injury. *See* Fed. R. Evid. 702(a). "PTSD is a specific disorder and expert testimony is required to establish its existence." *Biesty v. Knuckles*, No. 5:15-23-KKC, 2016 U.S. Dist. LEXIS 100209, at *13 (E.D. Ky. Aug. 1, 2016).

Fed. R. Evid. 702(b)-(d) establish criteria for evaluating the reliability of expert testimony insofar as whether the opinion is based on sufficient facts or data, the product of reliable principles and methods and whether the opinion reflects their reliable application to the fact in the case. The Defendants do not address the methodology whereby Klein has formulated her opinions, other than to state generally that psychological testing is necessary to diagnose PTSD and Klien is not qualified to conduct such testing. Defendants support this contention by citation to *Blackshear*, 2005 U.S. Dist. LEXIS 46109. While that case did opine, based on the then-existing version of KRS 335.020, that a social worker was not qualified to conduct psychological testing, it did not

hold that psychological testing was the sole means of diagnosing PTSD. The current version of the statute permits LCSWs to diagnose mental disorders and Defendants have provided no authority for the proposition that "psychological testing" of a type within the sole purview of the practice of psychology is the only means of diagnosing PTSD. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008). Here, the Defendants are silent as to how Klien arrived at her diagnosis and, therefore, there is no basis upon which the court can conclude that it does not rest upon a reliable foundation. To the extent the Defendants disagree with the diagnosis, "vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

WHEREFORE, the Defendant's motion to strike Hannah Klein, LCSW as an expert witness on behalf of the Plaintiff, DN 68, is **DENIED**.

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

September 22, 2026

Copies: Counsel